UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TIMOTHY BROOKS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>VF CORPORATION, agent of Vans; and VF OUTDOOR LLC, doing business as Vans,<br><br>Defendants. | CASE NO. 2:26-cv-2440-JNW<br><br>REMAND ORDER |

## 1. INTRODUCTION

This matter comes before the Court on Defendants V.F. Corporation and VF Outdoor, LLC's (collectively, "VANS) motion to stay this case pending the Ninth Circuit's resolution of *Montes v. SPARC Grp., LLC*, No. 23-35496 (*Montes* I) and *Montes v. Penney OpCo, LLC, et al.*, Nos. 25-8045, 26-241 (*Montes II*). Dkt. No. 22. But before reaching it, the Court must confirm its jurisdiction. For the reasons stated below, the Court finds it lacks subject matter jurisdiction, DENIES the motion to stay, and REMANDS the case to King County Superior Court.

## 2. BACKGROUND

Plaintiff Timothy Brooks filed this putative class action in King County Superior Court against VANS. Dkt. No. 1-1. Brooks claims that VANS violated Washington's Commercial Electronic Mail Act ("CEMA") and Consumer Protection Act ("CPA") by sending consumers marketing emails with false or misleading subject lines. *Id.* VANS removed this action to this Court, asserting federal jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"). Dkt. No. 1 at 4.

On September 1, 2026, VANS moved for a stay pending the resolution of the *Montes* appeals. Dkt. No. 22. Brooks opposes a stay, arguing that *Montes II* is distinguishable because unlike the *Montes II* plaintiff—who welcomed marketing emails—he did not consent to receive VANS's messages. In the alternative, Brooks argues that instead of waiting for the Ninth Circuit to determine whether the Court has jurisdiction, the case should be remanded because "[j]urisdiction existed in state court" so delay is unnecessary. Dkt. No. 24 at 8.

On October 5, 2026, Brooks filed a First Amended Complaint ("FAC"). Dkt. No. 29. On November 2, 2026, VANS moved to dismiss the FAC, arguing that Brooks failed to state CEMA and CPA claims under Federal Rule of Civil Procedure 12(b)(6). Dkt. No. 32. The motion to dismiss remains pending.

Both Parties agree Brooks suffered a concrete injury for the purposes of Article III standing. Dkt. Nos. 24 at 7–8; 32 at 14 n.9. Because Article III standing is a threshold issue, the Court starts there. *Hutton v. Papa John's USA Inc.*, No. C25-1922-KKE, 2026 WL 2210133, at *1 (W.D. Wash. July 31, 2026).

## 3. DISCUSSION

### 3.1 Legal standard.

"Under Article III, the Federal Judiciary is vested with the 'Power' to resolve not questions and issues but 'Cases' or 'Controversies.'" *Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 132 (2011). "Among other things, that limitation requires a plaintiff to have standing." *Fed. Election Comm'n v. Cruz*, 596 U.S. 289, 295–96 (2022). If a plaintiff lacks Article III standing, the Court does not have subject matter jurisdiction. *See Warth v. Seldin*, 422 U.S. 490, 498 (1975). The standing inquiry begins with a simple principle: "No concrete harm, no standing." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 417 (2021). "[T]o establish standing, a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *Id.* at 423 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).

"[T]he Supreme Court made clear that a plaintiff does not 'automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.'" *Robins v. Spokeo, Inc.* (*Spokeo II*), 867 F.3d 1108, 1112 (9th Cir. 2017) (quoting *Spokeo, Inc. v. Robins* (*Spokeo I*), 578 U.S. 330, 341 (2016) *as revised* (May 24, 2016)). To establish a concrete injury, "the plaintiff must allege a statutory violation that caused him to suffer some harm that 'actually exist[s]' in the world; there must be an injury that is 'real' and not 'abstract' or merely 'procedural.'" *Id.* (quoting *Spokeo I*, 578 U.S. at 340). Put simply, "an injury in law is not an injury in fact."

*TransUnion*, 594 U.S. at 427. The key question is whether the plaintiff has identified "a close historical or common-law analogue" for the asserted injury. *Id.* at 424. Physical and monetary harms readily qualify, and so can some intangible harms, such as intrusion upon seclusion. *Id.* at 425.

"The burden of establishing removal jurisdiction, even in [CAFA] cases, lies with the defendant seeking removal." *Washington v. Chimei Innolux Corp.*, 659 F.3d 842, 847 (9th Cir. 2011). So VANS, as the party invoking federal jurisdiction, must establish "the facts necessary to support standing with the manner and degree of evidence required at the successive stages of the litigation." *Tailford v. Experian Info. Sols., Inc.*, 26 F.4th 1092, 1099 (9th Cir. 2022). At the pleading stage, the Court looks to the allegations in the complaint. *See id.* at 1099 & n.2. If the Court determines, after removal, that it lacks subject matter jurisdiction, it must remand the case to state court. 28 U.S.C. § 1447(c). Remand, not dismissal, is the proper remedy. *Polo v. Innoventions Int'l, LLC*, 833 F.3d 1193, 1196 (9th Cir. 2016).

### 3.2 VANS has not shown that Brooks suffered a concrete injury.

VANS maintains that the Court has subject-matter jurisdiction, Dkt. No. 23 at 11, but identifies no concrete injury in the FAC. It argues that "[Brooks] alleges harms such as annoyance and harassment from receiving emails with allegedly misleading subject lines." Dkt. No. 23 at 13 (citing Dkt. No. 1-1 ¶ 98). On the next page, VANS argues the opposite, that the CEMA violation of deceptive emails did not cause the alleged injury because "waste of time and flooded inboxes are tied to the frequency of emails, which would not change even if the emails had a different

subject line." Dkt. No. 23 at 13. VANS stresses the lawsuit is based on "*passive* receipt of emails" which is not an objective economic loss. Dkt. No. 23 at 13 (emphasis added). VANS further argues that harassment from receiving deceptive emails "resembles harms traditionally actionable at common law, including nuisance, and suffices to establish Article III standing at the pleading stage." Dkt. No. 32 at 14 (citing *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017); *Harbers v. Eddie Bauer, LLC*, 415 F. Supp. 3d 999, 1010–11 (W.D. Wash. 2019)).

But *Harbers* was decided before *TransUnion*, and it rested on the premise that a CEMA violation is itself "the kind of concrete injury that the Washington Legislature sought to prevent." *Harbers*, 415 F. Supp. 3d at 1009. *TransUnion* holds that a legislature's "creation of a statutory prohibition or obligation and a cause of action does not relieve courts of their responsibility to independently decide whether a plaintiff has suffered a concrete harm under Article III." 594 U.S. at 426. As a result, the Court declines to follow *Harbers*.

Instead, the Court follows "an ever-growing list of decisions [in this District] finding that the mere receipt of alleged misleading or false marketing email subject lines, absent any allegation of economic loss, detrimental reliance, or any comparable injury, does not constitute a concrete harm sufficient to establish Article III injury." *Stutsman v. Sirius XM Radio LLC*, No. 2:25-CV-01113-LK, 2026 WL 2445129, at *4 (W.D. Wash. Aug. 20, 2026) (collecting cases). *See also Hutton*, 2026 WL 2210133, at *2 ("The Court finds that merely alleging a CEMA violation is insufficient to allege a concrete injury to [the plaintiff]."); *Aronson v. 5 Star Apparel*

LLC, No. C25-2691JLR, 2026 WL 2332885, at *2 (W.D. Wash. Aug. 4, 2026) ("[E]ven if [the plaintiff] has plausibly alleged that [the defendant] violated CEMA, he cannot pursue his claim in this court because he failed to allege an Article III injury-in-fact."); *Samaduroff v. David Peyser Sportswear Inc*, No. 3:26-CV-05275-TMC, 2026 WL 2675977, at *2 (W.D. Wash. Sept. 11, 2026) ("The fact that Plaintiffs received emails allegedly in violation of CEMA does not itself constitute injury-in-fact under Article III.").

Brooks argues his Complaint is distinguishable because he did not consent or want VANS's emails. Dkt. No. 24 at 7–8. In Brooks's view, "[e]ven if, [he] at some point 'consented' to receive VANS's emails, there will be no showing that [Brooks] or any putative class members consented—even in the attenuated, fictitious sense—to receive deceptive advertising. *Id.*

Brooks's focus on consent in this way is mistaken. CEMA "does not prohibit unsolicited emails." *Stutsman*, 2026 WL 2445129, at *3; *see Merrick v. Premium Brands Opco LLC*, No. 2:25-cv-02291-JNW, 2026 WL 3025764, at *2 (W.D. Wash. Oct. 8, 2026). And as Brooks admits, CEMA protections against deceptive email subject lines applies to both solicited and unsolicited emails. So whether or not Brooks wanted VANS' emails, he sues over their subject lines, not over unwanted contact.

But "[t]he mere 'receipt of alleged misleading or false marketing email subject lines from a solicited company,' absent any allegation of 'economic loss, detrimental reliance, or any comparable injury,' does not 'constitute a concrete harm.'" *Nuri v. True Religion Apparel*, No. 2:25-CV-00690-LK, 2026 WL 864886, at

*3 (W.D. Wash. Mar. 30, 2026) (quoting *Montes v. Catalyst Brands LLC*, No. 2:25-CV-0281-TOR, 2025 WL 3485827, at *3 (E.D. Wash. Dec. 4, 2025)). Brooks does not allege that the emails cost him time or storage, or that he bought anything, relied on them, or lost money. *See Merrick*, 2026 WL 3025764, at *2–3.

Because VANS has not shown that the violation caused Brooks concrete harm, it has not carried its burden to establish Article III standing.

### 3.3 Remand is appropriate.

Citing other cases in this District that have stayed putative CEMA class actions, VANS urges the Court to wait for the Ninth Circuit to resolve the "Article III question" in *Montes II*. Dkt. No. 22 at 12. But, in this case, the Court does not find standing to be an open question. It reaches its conclusion based on the allegations in the FAC, and it need not await further rulings from the Ninth Circuit. Because the Court lacks jurisdiction, it doesn't reach Brooks's arguments that the issues in the *Montes* appeals do not require the Court to await their resolution and that failing to proceed would be inequitable. Accordingly, the Court finds remand is the appropriate course. *See* 28 U.S.C. § 1447(c); *Polo*, 833 F.3d at 1196.

## 4. CONCLUSION

In sum, the Court ORDERS as follows:

1. This case is REMANDED to King County Superior Court, effective FOURTEEN (14) days from the date of this Order. *See* LCR 3(i).

2. VANS' motion to stay, motion to dismiss, motion to strike, and motion to dismiss the First Amended Complaint, Dkt. Nos. 22, 23, 31, 32, and the Parties' stipulated motion to extend the deadline for VANS to respond to Brooks's First Amended Complaint, Dkt. No. 30, are DENIED as moot.
3. The Clerk of Court is directed to CLOSE this case.

Dated this 6th day of November, 2026.

Jamal N. Whitehead
United States District Judge